**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CHARLOTTE SMITH, ET AL.<br><br>               Plaintiffs,<br><br>      v.<br><br>EBAY CORPORATION, ET AL.,<br><br>             Defendants. | Case No.  C-10-03825-JF(HRL)<br><br>**PLAINTIFFS' FIRST AMENDED**<br><br>**CLASS ACTION COMPLAINT**<br><br>**AND JURY DEMAND** |

## FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

NOW COMES CHARLOTTE SMITH, PAUL JACKSON, ART BELTRONE, LEE BELTRONE, JAMES MOUNTAIN, JEAN MOUNTAIN, REX STARK and PATTI STARK, individually and on behalf of all others similarly situated,  by and through their attorneys, Macuga, Liddle, & Dubin, P.C., Peter W. Macuga, II, and Kevin J. McGiness and say as their First Amended Class Action Complaint against eBay, Inc., et al. ("the Defendant"), states as follows:

## NATURE OF THE ACTION

1.   Plaintiffs bring this action on their own behalf individually and on behalf of all individuals wherever located who are sellers that have and will continue to pay fees to utilize online auction/sales services from Defendant.

2.   Plaintiffs effectively have and will continue to have no choice but to accept payment using only eBay owned PayPal, and as a result sellers are and will continue to be required to pay eBay through PayPal an additional fee up to 3% and .30USD per

transaction. Defendant's actions constitute an unlawful tying arrangement resulting in an impermissible restraint of trade, in violation of federal law.

3.   The activities of Defendant have and will continue to threaten to have substantial adverse competitive effects upon interstate commerce within the United States.

4.   Plaintiffs allege that Defendant eBay, and its officers and owners, conspired to violate the Sherman Anti-Trust Act (15 USC §1, *et* seq), by purposefully creating an unlawful tying arrangement by effectively restricting sellers from accepting any forms of payment other than eBay owned Paypal, resulting in an impermissible restraint of trade.

**PARTIES, JURISDICTION, AND VENUE**

5.   Plaintiff Charlotte Smith is an individual and resident of the State of Michigan residing at 2960 Parker, Dearborn, 48124, with the username *Mydadsdaughter*.

6.   Charlotte Smith is a "seller" utilizing Defendant's online auction/sales services and is forced to pay fees both to eBay for listing and selling items, and to eBay through the use of PayPal.

7.   Plaintiffs Art Beltrone and wife Lee Beltrone are individuals and residents of the State of Virginia residing a 6057 Gordonsville Road, Keswick, 22947 with the username *Beltroneco*.

8.   Art and Lee Beltrone is a "seller" utilizing Defendant's online auction/sales services and are forced to pay fees both to eBay for listing and selling items, and to eBay through the use of Paypal.

9.   Plaintiff Paul Jackson is an individual and resident of the State of North Carolina residing at 2328 Asheby Woods Ct., Kernersville, 27284, with the username *Barneyalexanders*.

10. Paul Jackson is a "seller" utilizing Defendant's online auction/sales services and is forced to pay fees both to eBay for listing and selling items, and to eBay through the use of Paypal.

11. Plaintiffs James Mountain and wife Jean Mountain are individuals and residents of the State of Massachusetts with mailing address at P.O. Box 1030 Ashburnham, MA 01430, with the username *jimmtn*.

12. James and Jean Mountain is a "seller" utilizing Defendant's online auction/sales services and are forced to pay fees both to eBay for listing and selling items, and to eBay through the use of Paypal.

13. Plaintiffs Rex Stark and wife Patti Stark are individuals and residents of the State of Massachusetts with a mailing address at P.O. Box 1029 Gardner, MA 01440, with the username *ladystark.*

14. Rex and Patti Stark is a "seller" utilizing Defendant's online auction/sales services and are forced to pay fees both to eBay for listing and selling items, and to eBay through the use of Paypal.

15. All Plaintiffs are a "seller" utilizing Defendant's online auction/sales services and is forced to pay fees both to eBay for listing and selling the item, and to eBay through the use of PayPal, and are thus a member of the Class defined herein.

16.  Plaintiffs bring this class action on behalf of themselves and on behalf of the all persons who are a "seller" utilizing Defendant's online auction/sales services and were

and will be forced to pay fees both to eBay for listing and selling the item, and to eBay through the use of PayPal.

17. Defendant eBay Corporation is, and at all times relevant hereto was, a publicly-held Delaware corporation with its principal executive offices located at 2145 Hamilton Avenue, San Jose, California, 95125, and doing business throughout the United States.

18. Defendant is a corporation in good standing and has carried on continuous and systematic parts of its general business within the state of Michigan.

19. Defendant PayPal Corporation is, and at all times relevant hereto was, a wholly owned subsidiary of Defendant eBay with its principal executive offices located at 2145 Hamilton Avenue, San Jose, California, 95125, and doing business throughout the United States.

20. There are issues of Federal Question, and this court has jurisdiction pursuant to 23 U.S.C. §1331.

21. Venue is proper in this Court under 28 U.S.C. §1391 because a significant portion of events, acts, and omissions giving rise to this action occurred in the State of Michigan in this District and because eBay can be found in this District.

22. At all times herein mentioned, Defendant acted through its agents, servants and employees who, at all times herein mentioned, acted within the course and scope of their agency and employment with Defendant.

## **FACTUAL ALLEGATIONS**

23. Defendant is the largest online auction/sales service in Michigan and the United States, controlling in excess of an estimated 90% of the national online auction market.

24. On October 3, 2002, eBay acquired PayPal, the largest online payment system, and thus eliminated competition and expanded its own market dominance. eBay possesses effective monopoly power in online auction markets.

25. eBay has acted through its wholly-owned subsidiary PayPal to monopolize the available forms of payment that sellers can use on eBay, and has limited and banned competitors in an attempt to maintain its dominance in the online auction market.

26. eBay has implemented Accepted Payment Policies which effectively limits sellers to accepting payments only through eBay owned PayPal, and has thus created an improper tying arrangement between eBay and PayPal and caused an unreasonable restraint on trade.

27. Even before its acquisition of PayPal in 2002, eBay has and maintained dominance in the online auction market.  eBay is the largest online auction house in the United States and its name has become synonymous with online auctions.

28. eBay's dominance as an online auctioneer is essentially self-fulfilling; because it has the largest amount of buyers and sellers in a single place, it is the place where most buyers and sellers will gravitate to sell their goods and services.  This, in the aggregate, makes the barrier to entry for a competitor extremely high.

29. eBay possesses a dominant market position in online payment systems used with online auctions through its subsidiary, PayPal, a money transfer agent.

30. In order to maximize the number of bidders on a product, it is in the seller's interest to provide as many payment means as possible.  eBay's dominant position in the market for online payment systems for use with online auctions, and use of affirmative anticompetitive activity, has ensured, however, that there are functionally no other real choices for online payment on eBay besides PayPal.

31. In April 1999, eBay acquired Billpoint online payment system.  In March 2000, eBay launched Billpoint, but it failed in gaining any market share against another online payment system, PayPal.

32. From 1999 until 2002, when eBay acquired PayPal, eBay engaged in the following anticompetitive practices to extinguish PayPal as a competitor:

    a.  Banning PayPal from eBay's community boards;

    b.  Referring to Billpoint's payment service as "eBay Payments";

    c.  Funneling buyers to Billpoint, thereby giving the impression that the eBay payment format, known as "buy it now," accepted only Billpoint payments;

    d.  Declaring that sellers were required either to have a credit card merchant account and or accept Billpoint to be included in eBay stores, de facto excluding PayPal as a payment option;

    e.  Giving preferential placement to Billpoint on eBay's end-of-auction e-mails;

    f.  Replacing saved preferences for PayPal with Billpoint preferences; and

g. Mandating that buyers use a "checkout" feature that presented marketing materials promoting Billpoint and even took the buyer to a Billpoint payment form.

33. eBay's anticompetitive conduct, listed in ¶32, caused PayPal's previous management to threaten an antitrust lawsuit against eBay for engaging in an illegal bundling strategy. PayPal's previous management also filed a complaint with the Department of Justice and with the Federal Trade Commission.

34. On October 3, 2002, eBay acquired PayPal. One of the conditions of eBay's purchase of PayPal was that eBay would shut down Billpoint, PayPal's chief competitor. Thus, the acquisition by eBay of PayPal had the effect of eliminating competition in the market for online payment services.

35. On or around November 16, 2005, eBay acquired Verisign's payment gateway business. The acquisition of Verisign allowed eBay and PayPal the ability to process credit card payments internally, without relying on a bank or other intermediary, while at the same time eliminating Verisign as a rival online payment center.

36. Since acquiring payment competitors and establishing a monopolistic dominance on the online auction and payment market, eBay has further abused its inferred monopoly power by effectively foreclosing sellers from using alternative online payment systems on its PayPal and eBay websites.

37. For example, on or around July 3, 2006, Google Checkout was available for consumers' use on eBay. Google Checkout allowed credit-card purchases, without the purchaser sharing credit-card information with merchants. Google Checkout further promised to charge merchants $.20 and 2 percent per transaction, which was and is

considerably lower than PayPal's merchant fees.   Only three days after Google Checkout became available, eBay announced it was banning sellers from requesting payment through Google Checkout and updated its Safe Payment Policies to reflect the ban.

38. In January 2007, eBay again tightened the noose around the necks of sellers wishing to operate outside the confines of the PayPal online payment system.   On January 17, 2007, eBay doubled the PayPal Buyer Protection on its website, and in doing so effectively eliminated buyer protection for non-PayPal transactions.

39. In or around October, 2008, eBay announced a paperless payment policy, requiring sellers to accept electronic payments and effectively eliminating payments by cash, cashiers or personal check, or money order.

40. On or around October 6th, 2008 eBay acquired Bill Me Later, and merged its services with PayPal in an effort to further extend its leadership in online payments.

41. Since then eBay has further modified and restricted its Accepted Payments Policy to limit sellers to only accept PayPal, ProPay, Monebookers, Paymate, Merchant Seller Account, Payment upon Pickup, and Bill Me Later.

42. eBay specifically prohibits sellers from requesting payment via; cash through the mail, point-point cash transfer services(that are not banks), checks or money orders, bank-to-bank transfers, topping off a seller's prepaid credit or debit card, or online or other payment methods not specifically permitted in this policy.

43. eBay further requires sellers to specifically list which "acceptable" form(s) of payment in sellers listing.

44. As stated in eBay's Accepted Payments Policy, Sellers are prohibited from including in their listing the following:

     a. Ask buyers to contact them for additional payment methods.

     b. Offer a payment method to some buyers but not others.

     c. Discourage buyers from using any payment method the seller specified in the listing.

     d. Ask buyers to pay using a method not mentioned in the listing.

45. eBay's Accepted Payment Policy lists as examples of statements that sellers are prohibited in sellers statement from making to be;

     a. Contact us for payment information.

     b. Contact us for other payment methods.

     c. Contact us for your preferred payment method.

     d. Buyers may request to pay by check or money order.

46. The eBay prohibited actions stated in ¶44-45 apply to all transaction-related correspondence between a seller and a buyer as well as the listing.

47. If eBay believes that a seller has violated its Accepted Payment Policy the seller's listing will be removed and the seller may lose prepaid listing fees and have its selling privileges restricted.

48. While eBay lists purported alternative payment methods, eBay has through its intentional action made it so PayPal is the only viable option for sellers.

49. The purported additional payment options supposedly allowed by eBay are not viable alternatives for the following reasons;

a. ProPay: In order for a seller to use ProPay, the seller must be at an eBay Bronze status, thus precluding any sellers that do not move a volume of at least $3,000 a month for a consecutive 6 month period.  In Addition, ProPay requires a $24.00 annual fee, and offers starting rates at 3.1% and .30USD per transaction.

b. Moneybookers: If a seller is less than an eBay Bronze level seller, Moneybookers will hold 100% of the payment for a period up to 40 days.

c. Paymate: In order for a United States Seller to use Paymate, the seller must first register with a merchant account, which holds higher fees.   In addition, a US seller must first have a minimum 98% feedback with at least 10 sales in the prior 6 months, thus eliminating any new sellers.

d. Merchant Credit Card: Sellers would be required to set up a merchant account prior to registering through eBay.   By eBay's own admissions, merchant accounts hold higher fees, and eBay recommends sellers to look to the other listed options.

50. eBay has designed its Accepted Payment Methods so that PayPal is the most favorable method, and thus only viable method to sellers.  eBay has prohibited the use of any forms of payment that are more favorable than PayPal.

51. eBay has created a system by which sellers are required to pay eBay for listing and sales fees, as well as effectively being forced to accept PayPal and pay eBay an additional fee.

52. In or around April, 2011 eBay implemented further changes in its fee structure in order to force sellers to pay additional fees to eBay.  eBay began charging as part of

its final value fee to each eBay seller an amount based upon a sales price of the sellers individual item with the addition of the shipping price amount paid for by the seller.

53. Prior to April, 2011, eBay would charge a final value fee based upon the value and/or purchase price of the item, i.e. 9% of $100 dollar item sold, or $9.00.  As of April, 2011, eBay included the shipping charge as part of the final value and then charged the same percent for both, i.e. 9% of $110, with $100 for item sold and $10 shipping, or a total fee of $9.90.

54. eBay does not provide shipping services to eBay sellers and the cost of shipping is either born by the eBay seller or the eBay purchaser.

55. Although eBay does not provide shipping or charge shipping costs to the eBay seller or eBay customer, eBay nevertheless bases its final value fee upon the cost of the individual item sold and the cost of shipping that item.

56. The addition of the shipping cost paid for by either the eBay seller or the eBay customer, to the eBay final value fee (profit to eBay) renders no service to either the eBay seller or eBay buyer.

57. By the addition of the shipping costs for an item sold to the eBay purchaser to the eBay final value fee eBay is imposing a charge for no goods, or for no service, and is requiring eBay sellers to pay yet another percent of their profit to eBay with no corresponding benefit to the seller from eBay.

58. As eBay is a self-admitted monopoly business is the internet sales forum, by the imposition of the final value fee on an eBay seller shipping costs eBay is further

imposing unnecessary costs, improper costs, and illegal costs for the use of its monopoly system.

59. Defendant's actions allow it to unfairly utilize its market power/economic power and/or monopoly in the United States market, thereby harming members of the class. All of the acts and activities of Defendant, as heretofore set out, were performed willfully, intentionally, maliciously, and knowingly.

## CLASS ACTION ALLEGATIONS

60. Plaintiffs advance this class action on behalf of themselves and all others similarly situated who were or are sellers on eBay that pay listing and sales fees to eBay and are effectively forced to utilize eBay owned PayPal as the sole accepted payment method while paying an additional service fee to PayPal, as members of the putative Plaintiff Class.

61. Excluded from the class is Defendant, its directors, officers, employees or members of their families.

62. This action is brought and may be maintained as a Class Action pursuant to Fed. R. Civ. P. 23(b)(3), and case related law.

63. The requirements of Rule 23, including numerosity, typicality, adequacy, predominance and/or superiority, are satisfied.

64. The illegal monopolization and tying arrangements have harmed and continue to harm the interests of the vast majority of eBay sellers throughout the United States. The members of the Class are so numerous that joinder of all members is impracticable.

65. Plaintiffs' claims are typical of the claim of all members of the Class because Plaintiffs, like every other member of the Class, have been and continue to be exposed to Defendant's conduct and practices, and are consumers with the same legal rights at stake, and seeks the same relief under the same causes of action as the other members of the class.

66. Plaintiffs will fairly and accurately protect the interests of the members of the Class and have retained competent and experienced counsel. Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

67. Defendant's behavior is common to the class, thereby making appropriate injunctive relief with respect to the class as a whole.

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is not only impracticable, but impossible. The damages suffered by many members of the class are small in relation to the expense and burden of individual litigation and therefore it is highly impracticable for such members to attempt redress individually. There will be no extraordinary difficulty in the management of this class action. Common questions of law and fact exist with respect to all class members and predominate over any questions solely affecting individual members.

69. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual class members. These common legal and factual questions include, among other things:

> a. Whether Defendant is liable to Plaintiff Class for violations of federal antitrust laws;

b.   The definition of the relevant product and geographic markets;

c.   Whether Defendant has sufficient economic power in the tying market to restrain appreciably competition in the tied product market;

d.   Whether Defendant uses coercion in the market for online payment systems for use in online auctions;

e.   Whether Defendant is abusing its monopoly power and/or is illegally maintaining its monopoly power;

f.   Whether Defendant's actions caused injury to Plaintiff Class and whether Defendant should be enjoined from further violations;

g.   Whether the practices are ongoing; and

h.   Whether Defendant is liable to Plaintiff Class for treble damages for its violation of federal antitrust laws;

70.   Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

**COUNT I**
**Class Action By All Plaintiffs Against Defendant For**
**Violations of The Sherman Anti-Trust Act §2 (Abuse of**
**Monopoly Power and Monopoly Maintenance) For Damages**
**And Injunctive Relief Under 15 U.S.C §§15, 26 Respectively.**

71.   Plaintiffs re-allege and incorporate herein by reference as though fully set forth herein each and every allegation in all preceding paragraphs.

72.   By reason of the foregoing conduct eBay has willfully acquired and maintained monopoly power by engaging in anticompetitive conduct in the market for online payment systems for use in online auctions.

73. The anticompetitive conduct complained of includes; (i) prohibiting many forms of payment, including cash, check, or money order; (ii) obliging sellers to accept online payment forms that carry additional fees; (iii) intimidating sellers into acceptance of these forms of payment; (iv) seeking to exclude new payment services by destruction or the acquisition of competitors; (v) excluding the use of alternative payment systems; (vi) limiting acceptable payment systems to those with less favorable terms than PayPal; and (vii) steering buyers to PayPal.

74. eBay's monopolization conduct has had and/or is likely to include the following anti-competitive consequences:

    a. actual and potential competition in the market for online payment systems for use in online auctions has been injured, limited, reduced, restrained, suppressed, and effectively foreclosed; and

    b. eBay sellers are effectively forced to accept PayPal and as a result have paid or are likely to pay artificially inflated and supra competitive fees to eBay by paying for both listing, selling, and PayPal charges.

75. To the extent eBay has sought to achieve any legitimate business purpose through its conduct, it has not used the least restrictive means for doing so, any claimed precompetitive benefit is outweighed by the anticompetitive harm, and any purported legitimate business justifications are mere pretexts for illegal monopoly maintenance.

76. As a result of eBay's violations of the Sherman Act, Plaintiffs and the other class members have been and are being injured in their business and property in amounts to be determined.

77. Such violations and the effects thereof are continuing and will continue unless the injunctive relief requested is granted. Plaintiffs have no adequate remedy at law.

**COUNT II**

**Class Action By All Plaintiffs Against Defendant For
Violations of The Sherman Anti-Trust Act §2 (Attempted
Monopolization) For DamagesAnd Injunctive Relief
Under 15 U.S.C §§15, 26 Respectively.**

78. Plaintiffs re-allege and incorporate herein by reference as though fully set forth herein each and every allegation in all preceding paragraphs.

79. eBay has had a specific intent to achieve monopoly power in the market for online payment systems for use in online auctions.

80. By reason of the foregoing conduct, eBay has achieved a dangerous probability of monopoly power in the market for online payment systems for use in online auctions.

**COUNT III**

**Class Action By All Plaintiffs Against Defendant For
Violations of The Sherman Anti-Trust Act §2 (Unlawful
Tying) For Damages And Injunctive Relief Under
15 U.S.C §§15, 26 Respectively.**

81. Plaintiffs re-allege and incorporate herein by reference as though fully set forth herein each and every allegation in all preceding paragraphs.

82. By reason of the foregoing conduct, eBay has tied its online auction system with its online payment system (PayPal).

83. At all relevant times, eBay had monopoly power and/or market power and/or economic power in the relevant tying markets sufficient to force Plaintiffs and the other

class members to pay listing/sale fees and to accept payment via PayPal and pay additional fees.

84. The continued employment of the tying arrangement achieves no legitimate efficiency benefit to counterbalance its anticompetitive effect of foreclosing competition for various payment methods.

85. Plaintiffs and the other class members have been and are being forced to pay and accept PayPal fees at supracompetitive prices.

86. The ability of Plaintiffs and the other class members to sell items on eBay via superior and less-costly payment systems has been effectively and substantially reduced, limited, and foreclosed by the conduct complained of herein.

87. eBay intended by its actions to:

    a.  force Plaintiffs and the other class members into accepting PayPal as an accepted payment, and thus pay eBay (via PayPal) additional fees;

    b.  reduce, limit, and foreclose merit competition in the product markets for online payment systems for use in online auctions; and

    c.  injure and eliminate competition in the product markets for online payment systems.

88. eBay's tying conduct has had and/or is likely to have, among other things, the following effects:

    a.  actual and potential competition in the online payment systems markets for online auctions has been injured, limited, reduced, restrained, suppressed, and effectively foreclosed,

b.  eBay sellers are effectively forced to accept payment via PayPal and thus have paid or are likely to pay artificially inflated prices to eBay as a whole caused by reduced competition.

89.  As a result of eBay's violations of the Sherman Act, Plaintiffs and the other class members have been and will be injured in their business and property in amounts to be determined.

90.  Such violation and the effects thereof are continuing and will continue unless the injunctive relief requested is granted.  Plaintiffs have no adequate remedy at law.

## COUNT IV

### Class Action By All Plaintiffs Against Defendant For
### Violations of The Sherman Anti-Trust Act §1 (Unlawful Tying)

91.  Plaintiffs re-allege and incorporate herein by reference as though fully set forth herein each and every allegation in all preceding paragraphs.

92.  Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. §1, makes it unlawful to enter into a contract in restraint of trade or commerce.  Congress has granted a private right of action to those injured in violation of this provision.

93.  Plaintiffs, on behalf of themselves and the Class, seek redress for Defendant's violation of Section 1 of the Sherman Anti-Trust Act.

94.  Defendant improperly ties and bundles its online auction service (eBay) with its online payment system (PayPal).  Specifically and as explained above, Defendant contracted with the Class to provide online auction services but only on the condition

that the Class also accepts payment using Defendant's online payment system, PayPal.

95. As a result, the Class effectively cannot unbundle the tied products (the online auction service and the online payment system).

96. Instead, the Class is forced to pay service fees to PayPal, in addition to fees for the online auction service.  Defendant's conduct is particularly acute and egregious, given it is the largest online auction and online payment service providers in the entire United States.

97. Defendant has, at all times relevant to this action, maintained sufficient economic power in the online auction market to coerce Plaintiffs and the Class to accept the tied product.

98. Defendant's improper tying and bundling harms competition.  Since the Class can effectively only accept payment via PayPal, there is little motivation for other online payment systems to enter the market, and those that do are foreclosed from offering their services directly to members of the Class at a lower, market-driven, cost.

99. There is a market for online and/or other payment systems that is separate and apart from the market for Defendant's online auction services.  The online auction services and the payment methods are distinct and separate items.

100.      Defendant has, at all times relevant to this action, maintained sufficient economic power in the online auction market to coerce Plaintiff Class to accept payment via PayPal that they would not otherwise accept from Defendant.  This economic power will continue absent the relief sought herein.

101.     Defendant's conduct at issue involves a substantial amount of interstate commerce in the market for online auctions and online payment systems.

102.     Defendant's tying and bundling of its online auction service and its online payment system constitutes an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1.

103.     Defendant's tying and bundling activities have and continues to have an adverse impact upon online auction sellers and competition.

104.     There is no lawful business justification for eBay's actions.

105.     As a direct and proximate result of the aforesaid acts and activities of Defendant, Plaintiffs, and each of them, have been caused to sustain damage by virtue of amounts paid pursuant to the unlawful tying arrangement of online auction services and the online payment .

106.     All of the acts and activities of Defendant, as heretofore set out, were performed intentionally, fraudulently, maliciously, knowingly, and conspiratorially.

### COUNT V

**Class Action By All Plaintiffs Against Defendant For**
**Improper Collection of Shipping Fees as Part of Final Value Fee.**

107.     Plaintiffs re-allege and incorporate herein by reference as though fully set forth herein each and every allegation in all preceding paragraphs.

108.     In or around April, 2011 eBay implemented further changes in its fee structure in order to force sellers to pay additional fees to eBay.  eBay began charging as part of its final value fee to each eBay seller an amount based upon a sales price of

the sellers individual item with the addition of the shipping price amount paid for by the seller.

109.    Prior to April, 2011, eBay would charge a final value fee based upon the value and/or purchase price of the item, i.e. 9% of $100 dollar item sold, or $9.00.  As of April, 2011, eBay included the shipping charge as part of the final value and then charged the same percent for both, i.e. 9% of $110, with $100 for item sold and $10 shipping, or a total fee of $9.90.

110.    eBay does not provide shipping services to eBay sellers and the cost of shipping is either born by the eBay seller or the eBay purchaser.

111.    Although eBay does not provide shipping or charge shipping costs to the eBay seller or eBay customer, eBay nevertheless bases its final value fee upon the cost of the individual item sold and the cost of shipping that item.

112.    The addition of the shipping cost paid for by either the eBay seller or the eBay customer, to the eBay final value fee (profit to eBay) renders no service to either the eBay seller or eBay buyer.

113.    By the addition of the shipping costs for an item sold to the eBay purchaser to the eBay final value fee eBay is imposing a charge for no goods, or for no service, and is requiring eBay sellers to pay yet another percent of their profit to eBay with no corresponding benefit to the seller from eBay.

114.    As eBay is a self-admitted monopoly business is the internet sales forum, by the imposition of the final value fee on an eBay seller shipping costs eBay is further imposing unnecessary costs, improper costs, and illegal costs for the use of its monopoly system.

115.     Defendant improperly ties and bundles shipping charges with the final value fee.  Sellers are unable to sell goods without paying eBay of shipping costs, even though those shipping costs are expended costs of the sellers. Specifically and as explained above, Defendant contracted with the Class to provide online auction services but only on the condition that the Class also accepts paying eBay a percent value of any shipping charges along with final value fees for items sold.

116.     eBay's unlawful and improper actions of requiring Plaintiffs pay eBay a percentage value of shipping costs in order to sell items is a direct part of and in furtherance of its Anti-Trust activities.

117.     All of the acts and activities of Defendant, as heretofore set out, were performed intentionally, fraudulently, maliciously, knowingly, and conspiratorially.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows;

a.     For an order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiffs as representatives of the Class, and appointing the law firm of Macuga, Liddle & Dubin, P.C. as counsel for the Class;

b.     For an order that Defendant has violated the Sherman Anti-Trust Act;

c.     For all recoverable compensatory and other damages sustained by Plaintiffs and the Class;

d.     For injunctive relief prohibiting the future tying of online payment systems by Defendant;

e.      For injunctive relief prohibiting the future tying of shipping fees as part of

the Final Value Fee;

f.      For all statutory damages available under the claims asserted;

g.      For payment of costs of suit herein incurred;

h.      For both pre-judgment and post-judgment interest on any amounts

awarded;

i.      For payment of reasonable attorneys' fees and expert fees as may be

allowable under applicable law; and

j.      For such other and further relief as the Court may deem proper.

Dated: August 12, 2011                          Respectfully submitted,

**MACUGA, LIDDLE & DUBIN, P.C.**

/s/ PETER M. MACUGA, II
Peter W. Macuga, II (P28114)
Kevin J. McGiness (P73281)
Attorney for Plaintiffs
975 E. Jefferson Avenue
Detroit, MI 48207-3101
(313) 392-0015

## DEMAND FOR TRIAL BY JURY

NOW COME the Plaintiffs, by and through the undersigned counsel and hereby demands a trial by jury of the within cause of action.

/s/ PETER M. MACUGA, II
MACUGA, LIDDLE & DUBIN, P.C.
Peter W. Macuga, II (P28114)
Kevin J. McGiness (P73281)
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
(313) 392-0015

Dated:  August 12, 2011