1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE SMITH, et al.,

        Plaintiffs,

  v.

EBAY CORPORATION, ET AL.,

        Defendants.

_____/

No.  C 10-03825 JSW

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; GRANTING LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE**

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendants eBay Corporation ("eBay") and PayPal, Inc. ("PayPall") (collectively "Defendants")  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it previously found the matter suitable for disposition without oral argument and vacated the hearing on the motion.  *See* N.D. Civ. L.R. 7-1(b).  The Court HEREBY GRANTS IN PART AND DENIES, IN PART, Defendants' motion.

**BACKGROUND**

On April 12, 2010, Plaintiffs, Charlotte Smith, Art and Lee Beltrone, Paul Jackson, James and Jean Mountain, and Rex and Patti Stark (collectively "Plaintiffs") filed their original class action complaint against eBay and PayPal.  On September 28, 2011, Plaintiffs filed the First Amended Class Action Complaint ("FAC"), in which they allege Defendants violated

United States District Court

For the Northern District of California

1   Sections 1 and 2 of the Sherman Act.  Plaintiffs assert five claims for relief against the

2   Defendants: (1) abuse of monopoly power and monopoly maintenance in the market for online

3   payment systems for use in online auctions; (2) attempted monopolization of the market for

4   online payment systems for use in online auctions; (3) unlawful tying under Section 2 of the

5   Sherman Act; (4) unlawful tying under Section 1 of the Sherman Act; and (5) "improper

6   collection of shipping fees as part of final value fee."

7        Plaintiffs allege that eBay is "the largest online auction/sales service in ... the United

8   States, controlling in excess of an estimated 90% of the national online auction market."  (FAC

9   ¶ 23.)  On October 3, 2002, eBay acquired PayPal, which is the largest online payment system.

10  Plaintiffs allege that this acquisition "eliminated competition and expanded [eBay's] own

11  market dominance," such that eBay "possesses effective monopoly power in online auction

12  markets."  (*Id.* ¶ 24; *see also id.* ¶ 34 (alleging that acquisition "had the effect of eliminating

13  competition in the market for online payment systems").)  Plaintiffs also allege that eBay has

14  acted through PayPal to monopolize the forms of payments that sellers can use on eBay and has

15  "limited and banned competitors in an attempt to maintain its dominance in the online auction

16  market."  (*Id.* ¶ 25.)

17       Each of the Plaintiffs allege that they are "'seller[s]' utilizing Defendant's [*sic*] online

18  auction/sales services and [are] forced to pay fees both to eBay for listing and selling items, and

19  to eBay through the use of PayPal."  (*Id.* ¶¶ 5-14.)  According to Plaintiffs, in order to maximize

20  bids on a product sold in an online auction, it is in the seller's interest to provide as many

21  payment means as possible.  Plaintiffs allege that eBay's Accepted Payment Policy prohibits

22  sellers, *inter alia*, from asking buyers to contact them for additional payment methods, or asking

23  buyers to use a method a seller has not included in her or her listing.  (*Id.* ¶¶ 44-45.)  Plaintiffs

24  allege that if eBay believes a seller has violated the Accepted Payment Policy, eBay will

25  remove the seller's listing and may restrict his or her selling privileges.  (*Id.* ¶ 47.)  However,

26  none of the Plaintiffs allege that eBay has taken such action against them.

27       Plaintiffs also allege that, although eBay purports to offer payments methods that are

28  alternatives to PayPal, eBay has made PayPal the only viable payment option for sellers.  (*Id.* ¶¶

2

United States District Court
For the Northern District of California

48-50.)  Thus, according to Plaintiffs, in addition to paying eBay for listing and sales fees, sellers are forced to pay eBay additional fees when they use PayPal.  (*Id.* ¶ 51.)  "eBay's dominant position in the market for online payment systems for use with online auctions, and use of affirmative anticompetitive activity, has ensured, however, that there are functionally no other real choices for online payment on eBay besides PayPal."  (*Id. ¶ 30; see also id.* ¶¶ 36-43.)  Plaintiffs claim that these actions and eBay's Accepted Payment Policies "effectively limit" sellers to accepting payments only through eBay owned PayPal, which creates an improper tying arrangement between eBay's on-line auction services and PayPal's on-line payment services.  (*See id.* ¶¶ 26, 81-106.)  Plaintiffs also allege that as a result of eBay's conduct they "have paid or are likely to pay artificially inflated and supra competitive [*sic*] fees to eBay by paying for both listing, selling and PayPal charges."  (*Id.* ¶ 74.b, 85, 88.b.)

Finally, Plaintiffs allege that in April 2011, eBay changed the structure of its "final value fee," and it calculated that fee using both the dollar value of the item sold and the shipping fees incurred, even though eBay does not provide shipping services, the costs of which are born either by the buyer or the seller.  (*Id.* ¶¶ 52-58.)

**ANALYSIS**

**A.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A statute of limitations defense may be raised by a motion to dismiss where the running of the applicable limitations period is apparent on the face of the complaint.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

3

1    Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

2  must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at

3  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

4  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

5  *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

6  "The plausibility standard is not akin to a probability requirement, but it asks for more than a

7  sheer possibility that a defendant has acted unlawfully....  When a complaint pleads facts that

8  are merely consistent with a defendant's liability, it stops short of the line between possibility

9  and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal

10  quotation marks omitted).  If the allegations are insufficient to state a claim, a court should

11  grant leave to amend, unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*,

12  912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,

13  911 F.2d 242, 246-47 (9th Cir. 1990).

14  **B.**     **Plaintiffs' Claims Are Not Barred by the Statute of Limitations.**

15    Defendants move to dismiss each of Plaintiffs' claims on the basis that they are barred

16  by the statute of limitations.  Under the Clayton Act, 15 U.S.C.§ 15b, private antitrust claims

17  are subject to a four-year statute of limitations.  *See Hennegan v. Pacifico Creative Serv., Inc.*,

18  787 F.2d 1299, 1300 (9th Cir. 1986).  "A civil cause of action under the [antitrust laws] arises at

19  each time the plaintiff's interest is invaded to his damage, and the statute of limitations begins

20  to run at that time." *AMF, Inc. v. General Motors Corp.*, 591 F.2d 68, 70 (9th Cir. 1979)

21  (quoting *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1270 (9th Cir.

22  1975)).  Plaintiffs filed their original complaint on April 12, 2010, so any antitrust claim that is

23  based on conduct that occurred prior to April 12, 2006 would be barred.  Defendants argue that

24  Plaintiffs claims are based upon eBay's acquisition of PayPal in October 2002 and, thus, are

25  barred.  Plaintiffs argue, in turn, that they have alleged conduct that falls within the "continuing

26  violations" theory and, thus, the claims are timely.[1]

27

28    [1]     Plaintiffs do not rely on any other legal theory to argue that the statute of
limitations should be tolled.

In antitrust law, "[a] continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured." *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (citation omitted); *see also AMF*, 591 F.2d at 71.  It is clear, however, that "a continuation of harm to plaintiffs alone will not keep the cause of action alive without some overt act or continuing conduct of defendants during the limitations period." *Electroglas, Inc. v. Dynatex Corp.*, 497 F. Supp. 97, 105 (N.D. Cal. 1980).[2]  "When a continuing violation exists, the limitations period runs from the 'last overt act' by the defendant, which must be (1) a new and independent act that is not merely a reaffirmation of a previous decision that (2) inflicts a 'new and accumulating' injury on the plaintiff." *Red Lion Medical Safety Inc. v. Ohmeda, Inc.,* 63 F. Supp. 2d 1218, 1223 (E.D. Cal. 1999) (citing *Pace Industries*, 813 F.2d at 238). "'New and independent acts' may include active enforcement of policies first put into place outside the limitations period." *Red Lion*, 63 F. Supp. 2d at 1223 (citing *Columbia Steel Casting Co. v. Portland General Elec. Co.*, 111 F.3d 1427, 1444-45 (9th Cir. 1996)).

### 1. The Tying Claims.

Plaintiffs' tying claims are based on the theory that they have been injured by eBay's alleged attempts to tie use of its online auction services to PayPal's online payment services. "To restart the statute of limitations in a tying situation, [a plaintiff] must show that [a defendant] 'had the ability [to] and actually did enforce the tie' during the limitations period." *Eichman v. Fotomat*, 880 F.2d 149, 160 (9th Cir. 1989) (quoting *Airweld, Inc. v. Arco, Inc.*, 742 F.2d 1184, 1190 (9th Cir. 1984)."  However, the continued purchase of a defendants' product or services does not constitute a "new and independent" act that would restart the statute of limitations.  *See, e.g., Stanislaus Food Products Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *16 (E.D. Cal. Sept. 3, 2010) (citing *Aurora Enters. v. NBC*, 688 F.2d 689, 694 (9th Cir.

---

[2]     Any harm that accrues after the tolling of the statute of limitations periods but that is associated with an overt act that occurred prior to the limitations period is not remediable.  However, "each separate cause of action that so accrues [during the statute of limitations period] entitles a plaintiff to recover not only those damages which he has suffered at the date of accrual, but also those which he will suffer in the future from the particular invasion, including what he has suffered during and will predictably suffer after trial."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338-39 (1971).

United States District Court
For the Northern District of California

1982) ("Continual purchasing of the products is merely an affirmation of defendants' prior conduct and does not inflict a 'new and accumulating' injury on plaintiff.'"); *see also Rite Aid Corp. v. American Express Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 270 (E.D.N.Y. 2010) ("Collecting a contract fee is not a new and independent act.").

Although it is not binding, the Court finds the *Rite Aid* case to be instructive.  The plaintiffs in *Rite Aid* were a group of retail merchants who accepted American Express cards as payment from customers, pursuant to merchant agreements with the defendants.  One feature of these agreements was that defendants would collect a percentage of each transaction as a service fee.  Pursuant to the terms of the merchant agreements, on written notice, defendants were permitted to unilaterally change the fee they initially charged the plaintiffs.  According to the plaintiffs, in all instances, the fee was supracompetitive.  The plaintiffs also alleged that the defendant imposed "anti-streering" rules that prevented plaintiffs from urging customers to use forms of payment that were cheaper than American Express cards.  *Id.* at 260-61.  Based on these allegations, the plaintiffs brought claims against the defendants under Sections 1 and 2 of the Sherman Act.  *Id.* at 262.

The defendants moved to dismiss each of plaintiffs on the basis that the plaintiffs' claims were barred by the statute of limitations.  The court analyzed plaintiff's Section 1claim under a tying theory, and it found that although collecting a contract fee was not a "new and independent act," the defendants' "unilateral increases to its merchant discount fee [did] constitute over acts," which "did not merely reaffirm a contractual duty memorialized in a prelimitations agreement."  *Id.* at 270-71.  The court therefore found that the plaintiffs' Section 1 claims were "not barred to the extent that they see damages based on fee adjustments that [defendants] implemented within four years before" they filed suit.  *Id.* at 272.

It is undisputed that eBay acquired PayPal in 2002.  If Plaintiffs premised their claims solely on the acquisition of PayPal, their claims would be barred.  Plaintiffs, however, allege that eBay has continued to refine its Accepted Payment Policy to restrict acceptable forms of payment.  For example, Plaintiffs allege that in July 2006, within the limitations period, eBay announced that it would not permit payment through Google Checkout and updated its payment

policies to reflect that decision.  (FAC ¶ 37.)  In addition, Plaintiffs allege that in January 2007, again within the limitations period, eBay "doubled the PayPal Buyer Protection on its website, and in doing so effectively eliminated buyer protection for non-PayPal transactions."  (*Id.* ¶ 38.) Similarly, Plaintiffs allege that in 2008, eBay announced a policy by which it required sellers to accept electronic payments, which Plaintiffs allege "effectively eliminat[ed] payments by cash, cashiers or personal check, or money order."  (*Id.* ¶ 39; *see also id.* ¶¶ 42-46.)  Plaintiffs further allege that since 2008, eBay has "further modified and restricted its Accepted Payments Policy to limit sellers to only accept PayPal," and other forms of electronic payments that Plaintiffs contend are not viable alternatives to PayPal.  (*Id.* ¶¶ 41, 48-51.)

Thus, much like the plaintiffs in the *Rite Aid* case, Plaintiffs here premise their tying claims on eBay's continued modification of the Accepted Payment Policy.  As in the *Rite Aid* case, the Court concludes that those changes do constitute overt acts, and it finds that Plaintiffs have alleged sufficient facts to show that those changes inflicted new and accumulating harm on them.  In addition, Plaintiffs have alleged that eBay had the ability to and did enforce the purported tying arrangement within the limitations period.

Accordingly, the Court DENIES, IN PART, Defendant's motion to dismiss on this basis.

**2.      The Monopolization and Attempted Monopolization Claims.**

Plaintiffs' claims of monopolization and attempted monopolization are premised on the same conduct that supports their tying claims.  In brief, Plaintiffs allege that eBay has used its monopoly power to: prohibit many forms of payment; require sellers to accept payment forms that carry additional fees; intimidate sellers to accept those forms of payments; exclude new payment services by the "destruction or acquisition of competitors;" and steer buyers to PayPal. (FAC ¶ 73).

Defendants rely on the *USS-Posco* case, *supra*, to argue that these claims are barred by the statute of limitations.  In that case, the plaintiff, a tomato canner, alleged that the defendants had conspired to monopolize the market for the products used to make tin cans used by the plaintiff and to fix prices in that market.  The plaintiff alleged that two defendants had achieved this monopoly by creating a joint venture to manufacture the products for the purpose of

avoiding competition with one another in that market.  *Id.*, 2010 WL 3521979, at \*2-3.
Although the defendants created the joint venture outside the limitations period, the plaintiff
argued that its cause of action did not accrue until the joint venture raised its prices to
supracompetitive levels.  *Id.*, at \*13-14.  The court disagreed and concluded that the plaintiff's
claim for conspiracy to monopolize injured the market, and it concluded that the market had
been harmed when the joint venture was formed.  Although plaintiff continued to purchase
defendant's products during that time, the court noted that such conduct "is merely an
affirmation of defendants' prior conduct and does not inflict a 'new and accumulating injury' on
plaintiff."  *Id.*, at \*16.  Because the allegedly illegal act, the formation of the joint venture,
"occurred but one, single time," outside the limitations period, the court concluded that
plaintiff's claims challenging that conduct were barred.  *Id.*, at \*17.

This case is distinguishable from *Stanislaus* in that, unlike the plaintiff in the *Stanislaus*,
Plaintiffs do allege claims for attempted monopolization and monopolization.  *See, e.g., id.*, at
\*16 n.9.  In addition, Plaintiffs' claims of monopolization and attempted monopolization are not
based *solely* on the fact that eBay acquired PayPal.  As discussed above, Plaintiffs allege that
eBay has, for example, banned Google Checkout as an acceptable form of payment and has
doubled the PayPal Buyer Protection in order to continue its alleged efforts to monopolize the
market for online payment services for use in online auctions.  Plaintiffs also allege that in
October 6, 2008, eBay acquired Bill Me Later and merged its services with PayPal "in an effort
to further extend its leadership in online payments."  (FAC ¶ 40.)  Each of these actions
occurred within the limitations period, and Plaintiffs allege that they were harmed by these
actions.

Accordingly, the Court DENIES, IN PART, Defendants' motion on this basis as well.

**C.     The Court Dismisses the Tying Claims, With Leave to Amend.**

Defendants also move to dismiss Plaintiffs' tying claims on the basis that Plaintiffs fail:
(1) to allege facts to show that a tying arrangement exists; (2) to allege facts that show an actual
adverse effect on competition; (3) to allege facts supporting the relevant markets; and (4) to
allege facts showing antitrust injury.  Although the Court agrees that Plaintiffs have failed to

allege facts showing an adverse effect on competition, it shall address each of Defendants' arguments.

Tying arrangements are traditionally defined as "'an agreement by a party [the buyer] to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461-462 (1992). In order to prevail on a traditional tying claim, a must establish: "(1) that there exist two distinct product or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (citing *Eastman Kodak*, 504 U.S. at 461-462 (quoting *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5-6 (1958)).[3] In addition, Plaintiffs must allege that the tying arrangement has a "'pernicious effect on competition and lack ... of any redeeming virtue." *In re eBay Sellers Antitrust Litig.*, 545 F. Supp. 2d 1027, 1034 (N.D. Cal. 2008) (quoting *Northern Pac Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)); *see also Siegel v. Chicken Delight*, 448 F.2d 43, 47 (9th Cir. 1971) ("[T]he hallmark of a tie-in is that it denies competitors free access to the tied product market.").

### 1.     Tying Arrangement.

Plaintiffs allege that the two distinct products or services are on-line auction services provided by eBay (the "tying" service) and the on-line payment services provided by PayPal (the "tied" service). Plaintiffs concede that eBay does not require sellers to use PayPal as the sole method of payment, but they argue that eBay's policies have "effectively" created such a requirement. In such a case, Plaintiffs must be able to allege that using PayPal is "the only viable economic option." *See, e.g., Ways and Means, Inc. v. IVAC Corp.*, 506 F. Supp. 697, 701

---

[3]     Plaintiffs assert tying claims under Sections 1 and 2 of the Sherman Act. Courts have permitted plaintiffs to proceed on tying claims under Section 2 "at least where there is monopolization or attempted monopolization," as is alleged in this case. *See Apple, Inc. v. Pystar Corp.*, 586 F. Supp. 2d 1190, 1195 n.2 (N.D. Cal. 2008).

United States District Court
For the Northern District of California

1    (N.D. Cal. 1979).  Plaintiffs have alleged facts showing why the alternative forms of payment

2    permitted by eBay are not viable alternatives.  (*See, e.g.,* FAC ¶ 50.)  Whether or not this is in

3    fact true is a matter best addressed by way of summary judgment.

4            **2.      Adverse Effect on Competition.**

5            With respect to their Section 2 tying claim, Plaintiffs allege that eBay's tying conduct

6            has had and/or is likely to have, among other things, the following effects:
             a. actual and potential competition *in the online payment systems markets*

7            *for online auctions* has been injured, limited, reduced, restrained,
             suppressed, and effectively foreclosed; and b. *eBay sellers* are effectively

8            forced to accept payment via PaPal and thus have paid or are likely to pay
             artificially inflated prices to eBay as a whole caused by reduced

9            competition.

10   (FAC ¶ 88 (emphasis added).)  These allegations mirror the allegations in the *In re eBay Seller*

11   *Antitrust Litig.* case, which the court determined failed to adequately allege that competition in

12   the *tied* product market was harmed.  *See In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d at

13   1034.

14           With respect to their Section 1 tying claim, Plaintiffs allege that "Defendant's improper

15   tying and bundling harms competition.  Since the Class can effectively only accept payment via

16   PaPal, there is little motivation for other online payment systems to enter the market, and those

17   that do are foreclosed from offering their services directly to members of the Class at a lower,

18   market-driven cost."  (FAC ¶ 98.)  However, these conclusory allegations are not supported by

19   facts alleged elsewhere in the FAC.

20           Accordingly, the Court concludes that Plaintiffs have failed to allege facts showing that

21   the alleged tie caused harm to competitors in the tied product market.  Because Plaintiffs may

22   be able to allege such facts, the Court shall grant them one final opportunity to amend.

23           **3.      Relevant Market.**

24           In order to maintain a tying claim, a plaintiff allege facts showing that a defendant

25   possesses market power in the tying product, and a plaintiff must properly allege that market.

26   *See, e.g., Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 971-72 (9th Cir. 2008).

27   A relevant product market usually is defined as "the pool of goods or services that enjoy

28   reasonable interchangeability of use and cross-elasticity of demand."  *Tanaka v. University of*

10

United States District Court

For the Northern District of California

*So. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *see also W. Parcel Exp. v. United Parcel Serv. of America, Inc.*, 65 F. Supp. 2d 1052, 1058 (N.D. Cal. 1998).  A court may grant a motion to dismiss if a "'plaintiff fails to define [the] proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products....'"  *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d at 1031 (quoting *Queen City Pizza, Inc. v. Domino's Pizza Inc.*, 124 F.3d 430, 436 (3rd Cir. 1997); *see also Newcal Indus. Inc. v. Ikon Office Solutions, Inc.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (citing *Queen City Pizza*, 124 F.3d at 436-37) (court may dismiss where relevant market is "facially unsustainable").

Plaintiffs allege that the tying product is online auctions and the tied product is online payment services.[4]  Defendants argue that Plaintiffs definition of the relevant market is impermissbly narrow and fails to "show how this purported market is any different from the larger market for online payment systems for use on other sales formats, both on eBay and other online platforms."  (Mot. at 10:13-17.)

In essence, Defendants take issue with the possibility that Plaintiffs may attempt to rely on the theory that their relevant market is a submarket of a broader product market.  *See, e.g., Brown Shoe, Inc. v. United States*, 370 U.S. 294, 325 (1962) ("within [a] broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes").[5]  Plaintiffs have not, however, defined the relevant market solely by reference to consumers of the proposed products.  For this reason, the Court finds Defendants' reliance on *Colonial Med. Group., Inc. v. Catholic Healthcare W.*, No. C-09-2192-MMC, 2010 WL 2108123 (N.D. Cal. May 25, 2010), to be misplaced.  The Court also concludes that Plaintiffs'

---

[4]  Plaintiffs define the relevant market for the monopolization claims as the "market for online payment systems for use in online auctions."  (FAC ¶ 72.)

[5]  Neither Plaintiffs nor Defendants have addressed the factors identified in *Brown Shoe* relevant to a submarket.  *See* 370 U.S. at 325 ("The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.").  Because this issue is not adequately briefed, Defendants may renew this argument in connection with a motion for summary judgment summary judgment.

United States District Court

For the Northern District of California

1    allegations are not so conclusory that dismissal is warranted and, thus, also finds that this case is

2    distinguishable on its facts from *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, No. C-09-

3    3854-MMC, 2010 WL 1541257 (N.D. Cal. Apr. 16, 2010).

4          At this stage of the litigation, the Court cannot say that Plaintiffs' proposed relevant

5    product market is not sustainable on its face.  *See In re eBay Seller Antitrust Litig.*, 545 F. Supp.

6    2d at 1033 (noting that the Plaintiff did not claim that eBay's product alone constituted a

7    market, and concluding that Plaintiff's allegations of online auctions market and person-to-

8    person payment systems markets were sufficient to state a claim); *In re eBay Seller Antitrust*

9    *Litig.*, 2010 WL 760433, at *6-*9 (N.D. Cal. Mar. 4, 201) (finding triable issues of fact on

10   whether plaintiff established "online auctions market" was an economically distinct submarket

11   within broader category of online marketplaces), *aff'd* 433 Fed. Appx. 504, 2011 WL 1749206

12   (9th Cir. May 9, 2011).

13         Accordingly, the Court DENIES, IN PART, Defendants' motion on this basis.

14   **4.      Antitrust Injury.**

15         Defendants also move to dismiss Plaintiffs' tying claims on the basis that Plaintiffs fail

16   to allege facts showing antitrust injury.  The Ninth Circuit has identified "four requirements for

17   antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from

18   that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were

19   intended to prevent."  *American Ad. Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1055 (9th

20   Cir. 1999).

21         Defendants argue that Plaintiffs allegations fail to satisfy the requirements of Rule 8,

22   because they do not specify the amount of the fees at issue or show a link to the allegedly

23   anticompetitive actions and those fees.  However, Plaintiffs identify the specific fees at issue,

24   *i.e.* listing fees, selling fees and fees for using PayPal.  Plaintiffs also allege that by excluding

25   other, cheaper forms of online payment systems, the prices that eBay and PayPal charge are

26   artificially high.  The Court finds that Plaintiffs have alleged sufficient facts to show they

27   suffered antitrust injury.  *Cf. Garon v. eBay Inc.,* No. 10-cv-5737-JW, Order Granting Motion to

28   Dismiss at 6-7 (N.D. Cal. Nov. 30, 2011) (noting that if plaintiffs had relied on allegations that

United States District Court

For the Northern District of California

1   they paid monopolistic fees in relevant market as a result of eBay's decision to implement

2   challenged policy, plaintiffs could have stated a claim for relief).

3          Defendant also argues that Plaintiffs must be able to prove net economic harm, and that

4   because eBay and PayPal compete in "two-sided" industries, the conduct about which Plaintiffs

5   complain may actually be beneficial to sellers.  The Court finds these arguments are better

6   addressed in the context of a motion for summary judgment.[6]

7          Accordingly, the Court DENIES, IN PART, Defendants' motion on this basis.

8   **C.       The Monopolization Claims.**

9          Defendants also move to dismiss Plaintiffs' claims for monopolization and attempted

10  monopolization on the basis that Plaintiffs fail to allege facts to support the relevant markets

11  and on the basis that they fail to allege facts showing an antitrust injury.  "A claim of

12  monopolization under [Section] 2 of the Sherman Act has two elements: (1) the possession of

13  monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that

14  power as distinguished from growth or development as a consequence of a superior product,

15  business acumen, or historic accident." *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027,

16  1031 (N.D. Cal. 2008) (citing, *inter alia*, *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570 (1966)).[7]  In

17  addition, a plaintiff must allege facts to show "an injury caused by the violation." *Id.* (citing

18  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 855 (9th Cir. 1995); *P. Express, Inc. v. United Airlines,*

19  *Inc.*, 959 F.2d 814, 817 (9th Cir. 1992).  In order to state a claim for attempted monopolization,

20  "a plaintiff must demonstrate four elements: (1) specific intent to control prices or destroy

21  competition; (2) predatory or anti-competitive conduct directed toward accomplishing that

22  purpose; (3) a dangerous probability of success; and (4) causal antitrust injury." *Forsyth v.*

23  *Humana, Inc.*, 114 F.3d 1467, 1477 (9th Cir. 1997).

24  _____

25         [6]      Defendants rely, in part, on *Kypta v. McDonalds Corp.*, 671 F.2d 1282, 1285
    (11th Cir. 1982) in support of their argument that Plaintiffs' allegations of injury are not
26  sufficient.  However, the court in *Kypta* addressed whether the plaintiffs had proved antitrust
    injury on a motion for summary judgment, rather than a motion to dismiss.

27         [7]      The relevant market includes both a product market and a geographic market.
    *See Newcal Indus. Inc. v. Ikon Office Solutions, Inc.*, 513 F.3d 1038, 1045 n.4 (9th Cir.
28  2008).  Defendants do not argue that Plaintiffs fail to allege sufficient facts to define the
    relevant geographic market.

1    For the reasons set forth above, in connection with Plaintiffs' tying claims, the Court

2  concludes that Plaintiffs have sufficiently alleged the relevant market and have sufficiently

3  alleged facts to show antitrust injury.

4    Accordingly, the Court DENIES, IN PART, Defendants' motion to dismiss on this basis.

5  **D.      The Shipping Fee Claim is Dismissed, With Leave to Amend.**

6    Plaintiffs assert a claim for relief entitled "Improper Collection of Shipping Fees as Part

7  of Final Value Fee." (FAC ¶¶ 107-117.)  Defendants moved to dismiss on the basis that

8  Plaintiffs failed to articulate a legal basis for this claim.  In their opposition, Plaintiffs argue that

9  the facts alleged support a claim for unjust enrichment or for conversion.

10    Under California law, unjust enrichment is a theory of recovery, not an independent

11  legal claim.  *Melchoir v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003)

12  ("[T]here is no cause of action in California for unjust enrichment."); *see also McKell v. Wash.*

13  *Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006) ("There is no cause of action for unjust

14  enrichment.  Rather, unjust enrichment is a basis for obtaining restitution based on quasi-

15  contract or imposition of a constructive trust.").  Therefore, although Plaintiffs may be entitled

16  to recovery for unjust enrichment under other theories of liability, a claim for unjust enrichment

17  does not constitute a stand-alone cause of action.[8]

18    Conversion occurs where the defendant wrongfully exercises dominion
over the property of another. ... To establish conversion, a plaintiff must
19    show (1) his ownership of or right to possess the property at the time of the
conversion, (2) that the defendant disposed of the plaintiff's property rights
20    or converted the property by a wrongful act, and (3) damages. ... A plaintiff
in a conversion action must also prove that it did not consent to the
21    defendant's exercise of dominion.

22  *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (citations omitted).  In

23  addition, Plaintiffs must allege a specific, identifiable sum of money involved.  *See PCO, Inc. v.*

24  *Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395

25  (2007).

26

27    [8]      Some courts have found that it is unclear whether California law recognizes a
claim for "unjust enrichment" as a separate claim and have chosen to allow a claim for unjust
enrichment.  *See, e.g.*, *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal.
28  2006).  However, this Court believes the better course is to allow Plaintiffs to pursue
recovery for unjust enrichment under other theories of liability.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1        Plaintiffs have not alleged that Defendants converted a specific, identifiable sum that is

2   involved.  In addition, Plaintiffs allege that eBay includes the shipping fee in its final value fee.

3   Although Plaintiffs allege that Defendants do not provide shipping service or charge for

4   shipping, Plaintiffs do not allege that they did not consent to pay eBay a final value fee.

5   Although leave to amend should be freely granted, in light of the facts of this case, the Court

6   concludes that Plaintiffs would not be able to state a claim for conversion.

7        Accordingly, the Court dismisses the fifth claim for relief, with one final opportunity to

8   amend.  If Plaintiffs believe there is some other legal basis on which to recover for this alleged

9   conduct, they may include such a claim in the amended complaint permitted by this Order.

10  Similarly, although the Court has concluded that Plaintiffs cannot assert a claim for unjust

11  enrichment, the Court makes no finding as to whether Plaintiffs may be entitled to such

12  damages as a matter of law.

13  **CONCLUSION**

14       For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

15  Defendants' motion to dismiss.  Plaintiffs shall file and serve their Second Amended Complaint

16  by no later than January 27, 2012.  Defendants shall answer or otherwise respond within twenty

17  days after service of the Second Amended Complaint.  The Court HEREBY CONTINUES the

18  case management conference scheduled for February 10, 2012 to April 6, 2012 at 1:30 p.m.

19  The parties' Joint Case Management Conference statement shall be due by no later than March

20  30, 2012.

21       **IT IS SO ORDERED.**

22

23  Dated: January 5, 2012

24                           JEFFREY S. WHITE
                             UNITED STATES DISTRICT JUDGE

25

26

27

28