**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE SMITH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EBAY CORPORATION, ET AL.,<br><br>    Defendants.<br>_____/ | No. C 10-03825 JSW<br><br>**ORDER DENYING MOTION TO DISMISS TYING CLAIMS AND STRIKE CERTAIN FACTUAL ALLEGATIONS FROM PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Dismiss Plaintiffs' Tying Claims and to Strike Certain Factual Allegations from Plaintiffs' Second Amended Class Action Complaint, filed by Defendants eBay Corporation ("eBay") and PayPal, Inc. ("PayPal") (collectively "Defendants") The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it has had the benefit of oral argument. The Court HEREBY DENIES Defendants' motion.

**BACKGROUND**

On January 5, 2012, this Court issued an Order granting in part and denying in part Defendants' motion to dismiss the First Amended Class Action Complaint ("FAC"). (Docket No. 53 ("Order on Motion to Dismiss FAC").) On January 27, 2012, Plaintiffs filed the Second Amended Class Action Complaint ("SAC"), in which they renew their claims for: (1) abuse of

monopoly power and monopoly maintenance in the market for online payment systems for use in online auctions, in violation of Section 2 of the Sherman Act (Count I); (2) attempted monopolization of the market for online payment systems for use in online auctions, in violation of Section 2 of the Sherman Act (Count II); (3) unlawful tying under Section 2 of the Sherman Act (Count III); and (4) unlawful tying under Section 1 of the Sherman Act of Section (Count IV).[1]

The Court previously recounted the facts underlying this dispute, and it shall not repeat them here, except as necessary to the analysis. In brief, Plaintiffs allege, *inter alia*, that eBay has acted through PayPal to monopolize the forms of payments that sellers can use on eBay and has "limited and banned competitors in an attempt to maintain its dominance in the online auction market." (FAC ¶ 25.) Plaintiffs also allege that eBay "has further abused its inferred monopoly power by effectively foreclosing sellers from using alternative online payment systems on its PayPal and eBay websites." (*Id.* ¶ 36.)

> For example, on or around July 3, 2006, Google Checkout was available for consumers' use on eBay. Google Checkout allowed credit-card purchases, without the purchaser sharing credit-card information with merchants. Google Checkout further promised to charge merchants $.20 and 2 percent per transaction, which was and is considerably lower than PayPal's merchant fees. Only three days after Google Checkout became available, eBay announced it was banning sellers from requesting payment through Google Checkout and updated its Safe Payment Policies to reflect the ban.

(*Id.* ¶ 37.) According to Plaintiffs, "Defendant's tying and bundling activities and bans on alternative payment has prohibited alternative payment systems, such as Google Checkout, access to the largest online marketplace." (*Id.* ¶¶ 51, 78, 84, 94, 105, 111.)

The Court shall address specific additional facts as necessary in the analysis.

---

[1] The Court notes that, with respect to the Section 1 tying claim, Plaintiffs allege that "Defendant," *i.e.* eBay "improperly ties and bundles its online auction service with its online payment system (PayPal)." (SAC ¶ 100; *see generally* SAC ¶¶ 4, 97-114.) That is, Plaintiffs appear to allege only "single firm anti-competitive conduct...." *Apple, Inc. v. Pystar, Corp.*, 586 F. Supp. 2d 1190, 1195 n.2 (N.D. Cal. 2008); *see also* 15 U.S.C. § 1. As this Court previously noted, however, "courts have permitted plaintiffs to proceed on tying claims under Section 2 'at least where there is monopolization or attempted monopolization,' as is alleged in this case." (Jan. 5 Order at 9 n.3 (quoting *Apple, Inc.*, 586 F. Supp. 2d at 1195 n.2).) Moreover, Defendants have not challenged Plaintiffs' Section 1 claim on this basis.

**ANALYSIS**

Defendants move to: (1) strike allegations relating to conduct that occurred prior to April 12, 2006; (2) dismiss Counts III and IV, on the basis that Plaintiffs still do not allege harm to competitors in the tied product market; and (3) dismiss claims for damages premised on theories of unjust enrichment and conversion.

**A.     The Court Denies the Motion to Strike.**

Pursuant to Federal Rule of Civil Procedure 12(f), Defendants move to strike paragraphs 24, 27 and 31-35 from the SAC. A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 974 F.2d 1524, 1527 (9th Cir. 1993) (internal quotations and citations omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *California Dep't of Toxic Substance Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Ultimately, the decision about whether to strike allegations is a matter within the Court's discretion. *Id*. A motion to strike should be resorted to only when the matter to be stricken could have no possible bearing on the issues in litigation. *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

The paragraphs at issue relate to eBay's acquisition of PayPal in 2002 and its acquisition of Verisign in 2005. The paragraphs also provide background information regarding the evolution of eBay's Accepted Payment Policy. Defendants contend these allegations are immaterial, because all of this conduct falls outside of the limitations period. Plaintiffs argue that these paragraphs "demonstrate the historical progression of the eBay/PayPal business empire, a necessity for later proofs." (Opp. Br. at 6:24-26.) Although Plaintiffs do not explain what these later proofs might be, on this record, the Court cannot say that the allegations have no possible bearing on the issues in this litigation.

Accordingly, the Court DENIES the motion to strike.

3

The Court also DENIES Defendants' alternative request that the Court direct Plaintiffs to limit discovery to events that occurred after April 12, 2006. If Plaintiffs propound discovery for information or documents that predate April 12, 2006, this ruling shall not preclude Defendants from arguing that any particular request fails to satisfy the standards set forth in Rule 26(b)(1).

**B.    The Court Denies the Motion to Dismiss.**

   **1.    Applicable Legal Standard.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).

   **2.    The Tying Claims Survive.**

Defendants move to dismiss Plaintiffs' tying claims on the basis that Plaintiffs still fail to allege facts that show an adverse effect on competition in the tied product market. Tying

arrangements are traditionally defined as "'an agreement by a party [the buyer] to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461-462 (1992).

When it resolved Defendants' first motion to dismiss, the Court premised its ruling on the understanding that the tied product market was the national on-line payment systems market. However, at the hearing on this motion, Plaintiffs clarified that the tied product market is narrower and is defined as the national on-line payment services market for use in on-line auctions. Plaintiffs also clarified that they allege that the tying product market is the national on-line auction services market.

The Ninth Circuit has recently restated the elements of a tying violation in *Brantley v. NBC Universal, Inc.,* 675 F.3d 1193 (9th Cir. 2012). "A tying arrangement will constitute a per se violation of the Sherman Act if the plaintiff proves '(1) that the defendant tied two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market.'" *Id.* at 1197 n.7 (quoting *Cascade Health Solutions v. Peace Health*, 515 F.3d 883, 913 (9th Cir. 2008)). When a plaintiff pursues a Section 1 tying claim under the rule of reason, the plaintiff must "plead facts, which if true, will prove '(1) a contract, combination, or conspiracy among two or more persons or distinct business entities; (2) by which the person or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition[;]" and that plaintiffs suffered antitrust injury. *Id.* at 1197; *cf. In re Webkinz Antitrust Litig.*, 2010 WL 4168845, at \*2 (N.D. Cal. Oct. 20, 2010) (noting that "whether a 'pernicious effect' is characterized as a separate element to be pleaded and proved, or whether the use of that term in some of the precedents merely makes explicit that the requisite effect on a 'not insubstantial volume commerce' cannot be a benign one," is "of little consequence," since a plaintiff "must allege and ultimately prove facts showing a negative impact on competition in the tied product market").

5

As the court explained in *Brantley*, an adverse effect on competition occurs when "the tying arrangement will either harm existing competitors or create barriers to entry to new competitors in the market for the tied product, ... or will force buyers into giving up the purchase of substitutes for the tied product." *Id.* at 1199 (internal quotations and citations omitted); *see also Moore v. Matthews*, 522 F.2d 1207, 1212 (9th Cir. 1977) ("Competitors in the tied product market are injured if they cannot offer their products on an equal basis with the distributor of the tying product. ... Buyers are injured because they forego choices among products and services, ... and the public is harmed by the adverse effect on the market for the tied product.") (citations omitted).

In the *Webkinz* case, the court concluded that plaintiffs had alleged facts showing that the tying arrangement affected a not insubstantial amount of commerce, because they included facts showing that their purchases of the tied products from the defendant's competitors had substantially decreased as a result of the alleged tie-in. *Id.*, 2010 WL 4168845, at *4-5. In contrast, in *Brantley*, the court concluded that the plaintiffs had not alleged facts that "are typically alleged to flow from tying arrangements," because there were no facts showing that other sellers of the tied product were excluded from the tied product market or that the alleged tie-in raised barriers to entry in the market. Similarly, plaintiffs had not alleged that the tie-in caused consumers to "forego the purchase of substitutes for the tied product." *Brantley*, 675 F.3d at 1201.

Plaintiffs argue that they have sufficiently alleged harm to competition in the tied product market, and cite in particular to the allegation that "the Defendant's tying and bundling activities and bans on alternative payment systems has prohibited alternative payment systems, such as Google Checkout, access to the largest online marketplace," *i.e.* eBay/PayPal. (Compl. ¶¶ 51, 78, 84, 94, 105, 111). Plaintiffs allege, in essence, that they have been precluded from offering Google Checkout as an alternative to PayPal. It is reasonable to infer from these allegations that the alleged tying arrangement caused consumers of on-line auction services to forego substitutes for PayPal. *Cf. Jefferson Parish*, 466 U.S. at 14 (When a seller's power in the tying product market "is used to impair competition on the merits in another market, a

6

1  potentially inferior product may be insulated from competitive pressures. This impairment
2  could either cause harm to existing competitors or cause barriers to entry of new competitors in
3  the market for the tied product.").

4  In light of the significantly narrowed definition of the tied product market, the Court
5  concludes that the facts alleged are sufficient to show that the alleged tying arrangement would
6  affect a not insubstantial amount of commerce in the market for on-line payment services for
7  use in on-line auctions. The Court does view this as a close case. However, at this stage of the
8  litigation, the Court finds that Plaintiffs have alleged sufficient facts to cross the line from
9  possible to plausible and have stated claims for relief under a tying theory.

10  Accordingly, the Court DENIES the motion to dismiss on this basis.

### 3. The Court Denies the Motion to Dismiss the Damage Claims Based on the Shipping Fee.

13  In the SAC, Plaintiffs include allegations that although eBay does not provide shipping
14  services, it includes a shipping fee as part of the final value fee. (*See* SAC ¶¶ 53-61.) Plaintiffs
15  originally asserted claims for relief for unjust enrichment and conversion based on this conduct.
16  However, the Court dismissed Plaintiffs' unjust enrichment claim on the basis that it was a
17  theory of recovery, rather than a cause of action. The Court dismissed the claim for conversion
18  because it found that the facts alleged did not support a claim for conversion. (Order on Motion
19  to Dismiss FAC at 14:5-15:12.) The Court did note, however, that Plaintiffs may be entitled to
20  recovery for unjust enrichment, *but not conversion*, under other theories of liability. (*Id.* at
21  14:15-17.) The Court also granted Plaintiffs leave to amend if they could assert a different
22  theory of liability based on this conduct.

23  In the SAC, Plaintiffs abandon any separate claim for relief based on the shipping fee.
24  Rather, they allege that "[a]s a result of eBay's violations of the Sherman Act, Plaintiffs and the
25  other class members have ... suffered damages for conversion and/or unjust enrichment for
26  collection of shipping fees as part of the Final Value Fee." (SAC ¶¶ 80, 90, 95, 113; Prayer for
27  Relief § f.)

7

Defendant moves to dismiss these allegations on the basis that the Court has determined Plaintiff cannot state a claim for unjust enrichment or for conversion. *See Whittlestone, Inc. v. Handi-Craft, Co.*, 617 F.3d 970, 976 (9th Cir. 2010) (holding that Rule 12(f) "does not authorize a district court to dismiss a claim for damages on the basis that it is precluded as a matter of law"). Plaintiffs respond that they included references to "conversion" and "unjust enrichment" as "part and parcel" of the damages to which they might be entitled for the anti-trust violations. As Plaintiffs explain in their opposition brief, eBay through its "monopolistic position" can "compel money for the provision of" services that it does not provide. (*See* Opp. Br. at 9:4-7.) Plaintiffs have not drafted the SAC in the most artful manner, but the Court cannot conclude that, as a matter of law, Plaintiffs could not show that eBay's ability to charge the shipping fee is caused by its allegedly improper attempts to monopolize the relevant market. As such, the Court will not dismiss any claims for damages based on the allegedly unlawful collection of shipping fees.[2]

Accordingly, the Court DENIES the motion to dismiss on this basis as well.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss and to strike. The parties are HEREBY ORDERED to appear for a case management conference on June 22, 2012, at 1:30 p.m. The parties shall submit a joint case management conference statement on or before June 15, 2012.

**IT IS SO ORDERED.**

Dated: May 29, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[2] The Court reiterates, however, that Plaintiffs cannot proceed on a theory that Defendants' converted those fees. Conversion is a cause of action, and the Court has determined that Plaintiffs' failed to state a claim for conversion.

8